# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DOLORES L. WILLIAMS**

**VERSUS**

**CLEGG'S NURSERY, LLC, ET AL.**

**CIVIL ACTION**

**NO. 13-567-JWD-EWD**

## RULING AND ORDER

      This matter comes before the Court on the Motion for Summary Judgment (Doc. 45) filed by Clegg's Nursery, LLC ("Defendant"). Delores L. Williams ("Plaintiff") opposes the motion. (Doc. 53.) Oral argument is not necessary. Having carefully considered the law, facts in the record, and arguments of the parties, the Defendant's motion is granted.

## I.   Factual Background

### A. Introduction

      Plaintiff brings claims of discrimination on the basis of race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); discrimination on the basis of age under the Age and Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); discrimination on the basis of age and race under the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.* ("LEDL"); and hostile work environment based on age and race under Title VII and the ADEA.

### B. Plaintiff's Work History for Defendant

      Plaintiff began working for Defendant in September of 1982. (Doc. 45-5 at 30.) The current owners of Clegg's Nursery, Tom Fennell and Scott Ricca, purchased the business from Marshall Clegg in 1999. (Doc. 45-3 at 1; Doc. 45-5 at 37-38.) At the time of the purchase, Plaintiff was 45 years old and remained as an employee for the new owners of the business. (Doc. 45-3 at 1.)

Though there were several managers of Clegg's during Plaintiff's tenure, including Kelly Patterson, Patricia Aleshire, and Rita Farris, it is specifically the conduct of Farris which prompted the claims of age and racial discrimination. (Doc. 45-3 at 1; Doc. 1-2.) Farris became the manager of Clegg's Nursery in May of 2004 and supervised Plaintiff until her termination. (Doc. 45-4 at 1; Doc. 45-5 at 50-51.) Plaintiff claims that, while Farris was manager, the two developed a close, personal relationship and enjoyed a good working relationship. (Doc. 45-5 at 7, 34.)

Plaintiff's job-performance issues were documented by Defendant, occurring both before and during Farris' management, and included tardiness and altercations with other employees. (Doc. 45-4 at 1; Doc. 45-3 at 1.) Tardiness was a common problem for Plaintiff, resulting in write-ups and official meetings to discuss the problem. (Doc. 45-5 at 38-39.) Plaintiff admits she was late to work most of the time. (Doc. 45-5 at 39.) Plaintiff's first citation for tardiness occurred as far back as February 1997. (Doc. 45-5 at 38-39.)

In March of 2011, Plaintiff's shift was changed, and she was scheduled to begin work at 8:30 a.m. instead of 9:00 a.m. (Doc. 45-4 at 2; Doc. 45-5 at 75-76.) According to Farris and Ricca, this change was enacted to accommodate heightened business during spring. (Doc. 45-4 at 2.) Plaintiff complained that the change in time would result in increased tardiness. (Doc. 45-5 at 75.) When Plaintiff continued to arrive late after the shift change, Farris met with Plaintiff and demanded she begin to arrive to work on time. (Doc. 45-4 at 1.) Evidenced by Plaintiff's time card, she continued to arrive late after this meeting and arrived approximately 45 minutes late a few days before her termination. (Doc. 45-4 at 1; Doc 45-5 at 80-81.)

Tardiness was not Plaintiff's only job-related problem. Plaintiff's coworkers frequently complained about her behavior. (Doc. 45-4 at 1; Doc. 45-3 at 1.) These complaints date back to

1997 when Plaintiff's supervisor at the time labeled her as insubordinate and noted she had problems with another employee. (Doc 45-5 at 105-107.)

On May 27, 2010, Plaintiff was involved in a verbal dispute with a coworker, Campbell, which resulted in a written warning. (Doc. 45-4 at 1, 2; Doc. 45-5 at 37, 60.) The altercation took place while Farris was present. (Doc. 45-5 at 17.) During this argument, Plaintiff claims things got "ugly," as Campbell was using derogatory language directed at Plaintiff and yelling. (Doc. 45-5 at 62.) Plaintiff admits that when she walked away, she said "kiss my eyes," meaning "kiss my ass," but contends the comment was not directed at anyone specifically. (*Id.*) Plaintiff also alleges that Farris and Ricca orchestrated this incident, even though Farris attempted to stop Campbell from verbally attacking Plaintiff. (*Id.* at 15.) Plaintiff provides no evidence for this conclusion. Plaintiff continued to have problems with Campbell. (Doc. 45-4 at 182-83.)

On July 27, 2012, Plaintiff spoke to Farris about working more hours. (Doc. 45-4 at 1.) Farris denied Plaintiff's request, citing the elimination of hours for all employees due to a slow period of the season. (*Id.*) Plaintiff reminded Farris that she had done many things for her, yet Farris had failed to properly thank anyone. (Doc. 45-5 at 241-42.) Farris, believing this comment referred to donations collected for her deceased son's burial, considered Plaintiff's comments unprofessional and inappropriate. (Doc. 45-4 at 2.) As a result of this exchange in culmination with past performance problems, Farris recommended Plaintiff's termination to the owners. (Doc. 45-4 at 2.) Farris told Ricca and Fennell she was no longer capable of working with the Plaintiff, and they agreed to Plaintiff's termination. (Doc. 45-4 at 2; Doc. 45-3 at 2.)

Ricca, Fennell, and Farris held Plaintiff's termination meeting on July 31, 2012. (Doc. 45-3 at 2; Doc. 45-4 at 2.) When Plaintiff asked the cause of her termination, she was told only that it was a company decision and it "would take a few days." (Doc. 45-5 at 92.) Plaintiff claims to never

have received a reason, though she cites several possible causes. For example, Plaintiff stated that Farris was afraid of being terminated, so she fired Plaintiff. (Doc. 45-5 at 32.) Plaintiff also speculated she was terminated because she asked for additional hours. (Doc. 45-5 at 9.) Other reasons cited by Plaintiff indicate a racial animus. Clegg's hired no one to replace Plaintiff.

### C. Other Employees of Defendant

Several of the employees at Clegg's Nursery were black and above the age of 40. (Doc. 45-5 at 29-30.) For example, Calvin Malbrew, Margella Dennis, and Jennifer Jones are black. (*Id.*) William Moores is four years older than Plaintiff. (Doc. 45-4 at 2.) Kim Beard was 53 when Plaintiff was terminated. (*Id.*) Plaintiff testified that Farris would schedule Beard, Malbrew, Fussell and Moores for more hours than Plaintiff. (Doc. 45-5 at 29-30.) She also stated that Farris gave preferential treatment to Jones and Dennis. (*Id.* at 26-27.) Plaintiff acknowledged that Farris would ensure several of the black and older employees did not lose hours or "time they needed to survive." (Doc. 45-5 at 29; Doc-45-4 at 2.) Plaintiff does not allege any other employees were treated poorly.

### D. Plaintiff's Allegations of Discrimination

Plaintiff cites to several occurrences and comments to support her discrimination and hostile work environment claims, some made by Farris and others made by coworkers.

In 1997, Plaintiff claims a coworker sang a song about returning to Africa. (Doc. 45-5 at 42-43.) Plaintiff says she was also offended by a fellow employee 12-14 years ago that inquired about Plaintiff's retirement plans. (Doc. 45-5 at 99-100.) She was further offended when another employee stated she had black friends and asked Plaintiff to go walking with her, (Doc. 45-5 at 20-21) as well as when Farris' mother offered to give Plaintiff clothing. (Doc. 45-5 at 97-98.)

When Farris asked Plaintiff to watch her children, she also took offense, even though Plaintiff stated she and Farris were close friends for around four years. (*Id*.)

Some of Farris' other comments offended Plaintiff, including: "You are getting old, do you get hot flashes?"; "Getting forgetful better check that out"; "Affirmative action was out, get you a lawyer"; and "What about arthritis in your hands and feet?" (Doc. 1-2 at 3-4.) Most notably, two or three years before Plaintiff's termination, she claims to have heard Farris state, "Why is this black bitch sitting and working in the air conditioner, when I get through with her, she will be on food stamps." (Doc. 1-2 at 4.) Although it is not clear if the comment was directed at Plaintiff, she perceived it to be. (Doc. 45-5 at 14.) These are the only statements Plaintiff can recall, and most occurred as far back as 1997.

Plaintiff also recounts various actions taken by Farris to support her claim of discrimination. Plaintiff states that Farris began seeing a doctor and sending her husband to a dentist once she began to spend time with Plaintiff. Plaintiff believes this to be racially motivated, but cannot explain how. (Doc. 45-5 at 24.) Plaintiff further believes that Farris was constantly involved in plots with other employees meant to cause her to fail, and that Farris' ultimate goal was to see her be unsuccessful. (Doc. 45-5 at 53.) For example, Plaintiff recalls a time she received a write-up for placing documents under the cash register, but contends that Farris and another employee, Jones, placed the documents there hoping that Plaintiff would be reprimanded for failing to file paper work appropriately. (Doc. 45-5 at 26.) She believes that all of her coworkers were working against her. (Doc. 45-5 at 58-59.) Plaintiff also alleges that her altercation with Campbell was staged by Farris. (Doc. 45-5 at 15.)

Plaintiff stated that her termination resulted from Farris believing Ricca intended to fire Farris. (Doc. 45-5 at 30-31.) Indeed, Plaintiff specified that but for Farris' fear of losing her job,

she would not have terminated Plaintiff.[1] According to Plaintiff, Farris did not like working under Plaintiff's horticulture license because Farris was white, and therefore above Plaintiff. (Doc. 45-5 at 12.) Plaintiff also claims her frequent request for more hours played a role in Farris' decision to terminate her. (Doc. 45-5 at 55-56.)

### E. Plaintiff's EEOC and LCHR Charge

Plaintiff filed initial charges with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR") on August 23, 2012, alleging discrimination based on age, race, and religion, and listed the issues as discharge, harassment, termination, and terms/conditions. (Doc. 45-5 at 119.) However, the perfected EEOC charge dated October 23, 2012, alleged discrimination based only on race and age. (Doc. 45-5 at 120.) The only issue listed was discharge. (Doc. 45-1 at 6.) Plaintiff claims to have never seen the perfected charge (Doc. 45-5 at 102.) The perfected charge does not mention harassment, nor does it allege discrimination based on the reduction of work hours. (Doc. 45-5 at 120.)

The LCHR investigated Plaintiff's claims and found no supporting evidence; therefore, her claims were dismissed. (Doc. 45-6 at 2.) The EEOC conducted a substantial weight review and declined Plaintiff's request for reconsideration. (Doc. 45-6 at 3.) In dismissing the charges, both the LCHR and the EEOC cited contradictory and self-defeating evidence offered by Plaintiff. (Doc. 45-6 at 3.) Specifically cited were two of Plaintiff's statements: (1) Calvin Malbrew, a black male, was treated more favorably and (2) several of her co-workers over the age of 50 were treated more favorably. (*Id.*)

---

[1] It is unclear why Plaintiff believes Farris was facing termination. Her explanation stems from a text Farris received from Ricca the Friday before Plaintiff was terminated. Ricca, who was overseeing remodeling Farris was having done on her home, texted Farris to inform her the home inspector was at Farris'. Plaintiff believes this text message led Farris to believe she was being terminated. (Doc. 45-5 at 9-10.)

**II. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). The party opposing the motion for summary judgment may not sit on his hands, complacently relying on the pleadings. *Weyant v. Acceptance Ins. Co.*, 917 F.2d 209 (5th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. General allegations that fail to reveal detailed and precise facts will not prevent the award of summary judgment. *Walton v. Alexander*, 20 F.3d 1350, 1352 (5th Cir. 1994). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III. Discussion

### A. Parties' Arguments

Defendant argues that Plaintiff's claims fail for four reasons. First, Plaintiff's claim of age and race discrimination concerning the alleged reduction of hours is procedurally barred because Plaintiff failed to raise this issue in her EEOC charge and thus did not exhaust administrative remedies. (Doc. 45-1 at 9-10.) In the alternative, even if the Plaintiff had mentioned discrimination based on the reduction of hours in the August 2012 charge, it would still be untimely as it was not filed within 300 days of the alleged discriminatory action. (Doc. 45-1 at 10.) Second, Plaintiff failed to assert a *prima facie* case of race and age discrimination for either her termination or reduction of hours. (Doc. 45-1 at 11.) Third, Plaintiff has no evidence to prove Defendant's legitimate, nondiscriminatory reasons for her termination are pretext. (Doc. 45-1 at 12-17.) Fourth, Plaintiff cannot show the harassment was severe or pervasive enough to affect a term or condition of employment. (Doc. 45-1 at 17.)

Plaintiff responds only to the ability to establish a *prima facie* case. She reiterates that while all other employees were treated favorably, Farris treated Plaintiff negatively and intentionally reduced her hours. Plaintiff also asserts she was constantly subjected to racial slurs and condescending comments about her age. (Doc. 53-1 at 8.)

Defendant replies that Plaintiff has failed to offer any evidence to oppose the summary judgment. Rather, Plaintiff has presented only conclusory statements and unsubstantiated assertions. Plaintiff did not offer any evidence with her opposition, nor did she cite to any evidence in the record. Indeed, not once in Plaintiff's opposition does the Plaintiff cite to her deposition testimony. (Doc. 55-1 at 2.)

**B. Claim of Discrimination based on Reduction of Work Hours**

**1. Failure to Exhaust Administrative Remedies**

Raising a claim with the EEOC is a jurisdictional prerequisite to any Title VII suit. 42 U.S.C. § 2000e-16(c); *Brown v. GSA*, 425 U.S. 820, 833, 96 S. Ct. 1961, 1968, 48 L. Ed. 2d 402, 411 (1976); *Ray v. Freeman*, 626 F.2d 439, 442 (5th Cir. 1980); *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979). A judicial complaint that does not allege the exhaustion of administrative remedies is subject to dismissal. The scope of a judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). The Fifth Circuit in *Sanchez* further explained:

> The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is not filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action. Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation. Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.
>
> A more exacting rule would be destructive of the logic of the statutory scheme, for it would impede the ability of the Commission to effect voluntary compliance.  If an alleged discriminator knew that a particular issue which was the subject of EEOC conciliation efforts could never be the subject of a civil action, his incentive toward voluntary compliance would be lessened.

*Sanchez*, 431 F.2d at 466.

However, the scope of the inquiry is not limited to the exact charge brought to the EEOC. *Stewart v. May Dep't Stores*, 294 F. Supp. 2d 841, 848 (M.D. La. 2003). The plaintiff's cause of action may be based, "not only upon the specific complaints made by the employee's initial EEOC

charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fine v. G.A.F. Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

Plaintiff claims she was discriminated against due to the reduction of her hours; however, this was not set forth in her EEOC charge from August 2012. (Doc. 45-6 at 2; Doc. 45-6, Exh. D-4 at 8.) The allegation also did not appear in the perfected charge from October, nor was it alleged in the petition. (Doc. 45-6, Exh. D-4 at 8; *see* Doc. 1-2.) The scope of the EEOC investigation was limited to the circumstances surrounding Plaintiff's termination. (Doc. 45-6, Exh. D-7 at 11.) Thus, because a reduction in work hours cannot reasonably be expected to grow out of the charge of discrimination, Plaintiff's claim is barred.

### 2. Failure to File a Charge within 300 Days of the Discriminatory Act

Even if the Court held that Plaintiff's reduction of hours was reasonably within the scope of the EEOC investigation, Plaintiff's claim would still be untimely under the LEDL, ADEA, and Title VII.

Claims of discrimination asserted under the LEDL are subject to a one-year prescriptive period. LA. REV. STAT. § 23:303(D). This period begins to run from the day the injury or damage is sustained. LA. CIV. CODE art. 3492. The prescriptive period for LEDL claims is suspended during the administrative review or investigation of the claim conducted by the EEOC; however, the suspension shall not last longer than six months. LA. REV. STAT. § 23:303(D).

The law is clear that a plaintiff pursuing a claim of discrimination pursuant to Title VII and the ADEA must file a charge within 180 days after the alleged misconduct. That period of time is extended to 300 days if the aggrieved individual initially instituted proceedings with a state or local agency with the authority to grant or seek relief from the discrimination. 42 U.S.C. § 2000e-

5(e). In Louisiana, plaintiffs have 300 days from the date of the alleged discriminatory conduct to file a charge of discrimination with the EEOC, as the LCHR has authority to remedy employment discrimination, rendering Louisiana a "deferral state." *See* LA. REV. STAT. § 51:2231, *et seq*. If a claimant submits a charge to the EEOC, pursuant to a work-sharing agreement, the EEOC accepts it on behalf of the deferral state. The claimant is deemed to have initially instituted proceedings with the state agency, and the 300 day period is triggered. *Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000).

Plaintiff testified in her deposition that she saw a reduction in her work hours before June 2010. (Doc. 45-5 at 69.) When she emailed Ricca in June to request more hours, he explained that the reduction affected all employees at every location. (*Id*.) Though Plaintiff contends that only her hours were reduced, she clarified that after June 2010, many of her co-workers also faced a reduction in hours. (Doc. 45-5 at 71.) The alleged reduction in hours in June 2010 occurred far more than 300 days from the date of the Plaintiff filing her charge of discrimination with the EEOC. The claim has also prescribed under the LEDL.

Plaintiff has presented no evidence to oppose Defendant's motion for summary judgment on this ground. Because Plaintiff failed to exhaust administrative remedies regarding the reduction of her hours, or alternatively, failed to allege the discrimination within 300 days of the misconduct, Defendant is entitled to summary judgment on this issue.

### C. ADEA Claim of Discrimination

#### 1. ADEA Generally

"The Age Discrimination in Employment Act (ADEA) prohibit[s] employers from discharging or otherwise discriminating against any individual because of his or her age." *Palacios v. City of Crystal City, Tex.*, -- F. App'x. ---, No. 14-51176, 2015 WL 4732254, at *3 (5th Cir.

Aug. 11, 2015) (citations and quotations omitted).  "Under the ADEA, it is unlawful for an employer 'to discharge any individual or otherwise discriminate against any individual ... because of such individual's age.'" *Id.* (quoting 20 U.S.C. § 623(a)(1)).  "To establish a claim under the ADEA, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'" *Id.* (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)).

Direct evidence of discrimination is evidence that would prove that unlawful discrimination occurred without requiring any presumptions or inferences. *Palacious*, 2015 WL 4732254, at *3. If produced, no further analysis is required. *Id.* When direct evidence is not available, plaintiffs may rely on circumstantial evidence and prove their claims under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 668, 677  (1973). The *McDonnell Douglas* analysis requires plaintiffs to present a *prima facie* case of discrimination before the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. Once this is produced, the burden returns to the plaintiff to show that the offered reason is not true, but a pretext for age discrimination; or, even if the reason is true, the action would not have occurred but for the age of the plaintiff. *Palacious*, 201 WL 4732254, at *3.

Defendant contends the Plaintiff's claim fails on two grounds. First, the Defendant argues that the Plaintiff cannot establish a *prima facie* case. Second, the Defendant argues that, even if the Plaintiff could prove a *prima facie* case, she has failed to address Defendant's legitimate, nondiscriminatory reasons and thus cannot establish pretext. The Court will examine each of these.

### 2. *Prima Facie* Case

To establish a *prima facie* case, Plaintiff must show that (1) she was terminated from her position; (2) she was qualified for the position; (3) she was within the protected class (over 40 years old); and (4) she was either i) replaced by someone outside the protected class or ii) that the discharge occurred under circumstances giving rise to an inference of age discrimination. *See Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 309 (5th Cir. 2004); *Workoski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir. 1994). If the plaintiff can establish a *prima facie* case, an inference of discrimination arises. *Grimes v. Texas Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). Defendant only contests the fourth element.

### i. Parties' Arguments

Defendant argues that Plaintiff fails to offer any proof that shows her discharge occurred under circumstances giving rise to age discrimination. Plaintiff cannot claim that she was replaced by someone younger as Defendant hired no one to replace her. (Doc. 45-4 at 2.) Defendant also contends that instead of alleging people outside the protected class were treated more favorably, Plaintiff testifies that preferential treatment was given to older employees. In fact, it was these statements that prompted the LCHR and EEOC to dismiss her charges. (Doc. 45-6 at 2.) Defendant states that at most, Plaintiff only presented evidence that Farris had an issue with Plaintiff personally, which is not sufficient to establish a *prima facie* case of age discrimination. (Doc. 45-1 at 12.)

Plaintiff counters that a *prima facie* case of age discrimination is established through various circumstances that surrounded Plaintiff during her employment. Plaintiff cites the following as evidence of a *prima facie* case: Farris' favorable treatment of all other employees despite Plaintiff's years of service, an intentional reduction of Plaintiff's hours, and constant,

condescending statements about her older age. Plaintiff further states that review of the record establishes a genuine issue of fact. (Doc. 53 at 8.)

### ii. Analysis

Establishing a *prima facie* case is designed as a minimal burden, and it is not intended to be rigid or onerous. *Holtz*, 258 F.3d at 77; *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001). However, this Court need not decide if the *prima facie* case was satisfied; even assuming that the Plaintiff met this burden, Plaintiff fails to rebut Defendant's legitimate, nondiscriminatory reasons for her termination or offer sufficient evidence supporting a claim of discrimination. *See, e.g.*, *McDaniel v. Temple Independent School Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985); *O'Neal v. Roadway Express*, 181 F. App'x. 417, 420 (5th Cir. 2006); *Fahim v. Marriott Hotel Servs.*, 551 F. 3d 344, 350 (5th Cir. 2008).

### 3. Legitimate, Nondiscriminatory Reasons for Termination

"As stated above, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision." *Palacios*, 2015 WL 4732254, at *3. "The defendant's burden in this second step is met by producing evidence which, '*taken as a true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Juneau v. Quality Christmas Tree, Ltd.*, No. CIV.A. H-13-2535, 2014 WL 3796406, at *2 (S.D. Tex. July 30, 2014) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (emphasis in original)). This burden is one of production, not persuasion, and can involve no assessment of credibility. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105, 117 (2000).

To meet the burden of production, an employer must state its nondiscriminatory reasons in a coherent manner that gives the employee a realistic opportunity to identify the kind of evidence

needed to demonstrate that the employer's reason is pretextual. *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004). Though an employer may rely on subjective qualities in making personnel decisions, an employer must clearly "articulate in some detail a more specific reason than its own vague and conclusion feeling about the employee." *Id.*

Defendant points to several nondiscriminatory reasons for Plaintiff's termination. First, Plaintiff's work hours were reduced for fiscal purposes. (Doc. 45-3 at 2.) Defendant assigns work hours based on business needs, and certain seasons are not as busy as others. The reduction of hours affects all employees at each branch of Defendant's business.[2] Ricca explained to the Plaintiff that the reduction in employee hours was necessary to "keep the company healthy." (Doc. 45-3 at 2.) The reduction in work hours due to budgetary constraints has been identified as a legitimate, nondiscriminatory reason. *See EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173 (5th Cir. 1999).

Second, the Defendant points to various job performance issues that led to Plaintiff's termination. Several employees besides Farris complained about working with the Plaintiff. Aside from her altercation with Campbell, Plaintiff admitted that several employees had issues with her. The issues between Plaintiff and her coworkers were another factor in Defendant's decision to terminate Plaintiff. The lacking interpersonal skills and getting along poorly with coworkers is a legitimate, nondiscriminatory reason for termination. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999).

Third, Plaintiff's propensity to arrive late for her shifts was a factor in her termination. Plaintiff openly admits that she was late to work most of the time. She had not only been forced to meet with Farris because of her tardiness, but also received several written warnings. Regardless

---

[2] Defendant has four locations in Louisiana. (Doc. 45-3 at 1.)

of these warnings, Plaintiff continued to display excessive tardiness, arriving approximately 45 minutes late to work five days before her termination. Plaintiff acknowledges that this played a role in her termination. Frequent tardiness to work is a legitimate, nondiscriminatory reason for termination. *See, e.g.*, *Hollimon v. Potter*, 365 Fed. App'x 546 (5th Cir. 2010).

Though the aforementioned events aided in Defendant's decision, the ultimate decision to terminate Plaintiff's employment was made following Plaintiff's inappropriate comments made about Farris' deceased son. (Doc. 45-4 at 2.) Plaintiff admits to making these comments to Farris, although she claims to have been unaware they upset Farris. (Doc. 45-3 at 241-243.) However, it was the reference to Farris' son that prompted Farris to report Plaintiff to Ricca and Fennell, explaining she was no longer capable of working with the Plaintiff and would not remain as an employee if Plaintiff was not terminated. Insubordinate and disrespectful behavior to superiors along with intemperate behavior is a legitimate, nondiscriminatory reason for termination. *See Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 408 (5th Cir. 1999).

The Court finds that Defendant has satisfied the burden of production. Each reason is clearly articulated and highly specific and would enable Plaintiff to attempt to show pretext. The next question is whether Plaintiff has demonstrated that these various reasons are merely a pretext for age discrimination.

### 4. Pretext

"At [the final] step of the *McDonnell Douglas* analysis, an ADEA plaintiff must prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (citations and quotations omitted). "At the summary judgment stage, the question is whether the plaintiff has shown that there is a genuine issue of material fact as to whether this reason was pretextual."

16

*Palacios*, 2015 WL 4732254, at *3 (citation omitted). "A plaintiff may show [a genuine issue of material fact regarding] pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (citation omitted). The key issue with pretext is whether the employer's justification, "even if incorrect, was the real reason for the plaintiff's termination. A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Goudeau*, 793 F.3d at 476. (citations, quotations, and alterations omitted). "At the end of the day, the pretext inquiry asks whether there is sufficient evidence demonstrating the falsity of the employer's explanation, taken together with the *prima facie* case, to allow the jury to find that discrimination was the but-for cause" of the termination of the employee. *See id.* at 478.

### i. Failure to Rebut Nondiscriminatory Reasons for Termination

Plaintiffs must present evidence rebutting each of the nondiscriminatory reasons offered by the employer. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). "Where a plaintiff 'falls short of [his] burden of presenting evidence rebutting *each* of the legitimate, nondiscriminatory reasons produced by [the employer],' summary judgment is appropriate." *Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010) (emphasis in original).

The Court finds that the Plaintiff has failed to sustain her burden of showing that Defendant's stated reasons are a pretext for discrimination. The Court bases this conclusion on Plaintiff's complete failure to address Defendant's legitimate, nondiscriminatory reasons for termination in her opposition. Plaintiff has offered only conclusory allegations unsupported by facts and fails to identify any specific evidence in the record that supports her claims. In the absence of proof, the Court will not assume that the Plaintiff could or would prove the necessary

facts. *Stewart v. May Dep't Stores*, 294 F. Supp. 2d 841, 845 (M.D. La. 2003). Plaintiff has supplied only general allegations and unsubstantiated assertions. "Judges are not like pigs, hunting for truffles buried in briefs." *U.S. v. Dunkel*, 927 F.2d 955 (7th Cir. 1991). Nevertheless, a thorough review of the pleadings demonstrates that Plaintiff cannot show that there is a genuine issue of material fact as to whether the reason offered by Defendant was pretextual.

The pretext inquiry asks whether a jury could find that discrimination caused the adverse employment action. *Goudea*, 793 F.3d at 477. The evidence presented by the Defendant as to why Plaintiff was fired has not been refuted. Instead, Plaintiff admits to her performance problems, including the issues with other workers, frequent tardiness, and the comments directed at Farris concerning her son. Plaintiff further admits that employees over the age of 40 were given preferential treatment. Defendant has also produced evidence showing that since Farris has been manager, she has hired 15 employees over the age of 40.

It appears from the record that Plaintiff had personal conflicts with other employees and Farris, as Plaintiff alleges all other employees were treated favorably. Plaintiff stated she felt as if none of her fellow employees liked her, and they were trying to get rid of her. (Doc. 45-5 at 23.) Though this situation is unfortunate, personality conflicts between employees are not the business of the Federal Court. *Vore v. Indiana Bell*, 32 F.3d 1161, 1162 (7th Cir. 1994).

The Court finds that Plaintiff has failed to rebut the Defendant's legitimate, nondiscriminatory reasons for termination. Plaintiff has not created a genuine issue of fact with respect to whether age was the but-for cause of the Defendant's decision to terminate the Plaintiff.

### ii. Other Evidence of Discrimination

As final evidence of pretext, Plaintiff points to several stray comments made by Farris including, "You are getting old, are you getting hot flashes" and "Getting forgetful, better check

18

that out." Plaintiff also mentions that Farris asked Plaintiff about her arthritis. Comments offered as direct evidence of discrimination are always evaluated under the four-part test described in *CSC Logic*. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 656 (5th Cir. 1996). Under *CSC Logic*, for comments to constitute direct evidence of discrimination, they must be "(1) related [to the protected class of persons of which plaintiff is a member]; (2) proximate in time to the [complained-of adverse employment decision]; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Id.* at 655. "Comments failing to satisfy these requirements are merely 'stray remarks' that are independently insufficient to prevent summary judgment." *Ray v. United Parcel Serv.*, 587 Fed. Appx. 182, 187 (5th Cir. 2014).

Following the Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), comments offered in the pretext stage of the *McDonnell Douglas* analysis are evaluated under either the *CSC Logic* or the more lenient, two-part standard in *Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000). Pursuant to this two-part test, a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker. *Id.* at 225. The Fifth Circuit has stated "*Russell* often guides evaluation of comments presented as circumstantial evidence 'alongside other alleged discriminatory conduct,' but we have also held that *CSC Logic* remains applicable 'at least where the plaintiff has failed to produce substantial evidence of pretext.'" *Ray*, 587 Fed. Appx. at 195.

Plaintiff has failed to offer substantial evidence of pretext outside of the comments. *Compare Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 229 (5th Cir. 2000) (holding that plaintiff's ability to rebut the defendant's legitimate, nondiscriminatory reasons for the adverse

19

employment action coupled with the "constant drumbeat of 'old bitch'" that forced the plaintiff to "get earplugs so she would be able to work in the office" created an issue of fact for a jury to find manifest age animus), *with  Reed v. Neopost U.S.A., Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (concluding that sporadic, age-related comments were not sufficient to withstand summary judgment where plaintiff was called "old man," "old fart," "pops," and "grandpa" at various times in the course of his employment but struggled to identify who made which comment or when certain comments were made). Therefore, this Court will apply the *CSC Logic* standard. Upon such consideration, these comments do not constitute evidence establishing pretext and preventing summary judgment.

All of the comments relate to Plaintiff's protected class, but the comments by coworkers do not satisfy the requirement that comments be made by a person with control over the decision to terminate the Plaintiff.[3] Yet, Farris has direct control over Plaintiff's termination and had the ability to recommend Plaintiff's termination to Ricca and Fennell. However, the comments made by Farris do not relate to Plaintiff's termination. It is also important to note that none of the statements Plaintiff complains of were proximate in time to her termination. Farris recommended Plaintiff's termination in response to a specific conversation with employee. There is no evidence in the record that the statements cited by Plaintiff occurred near the time of her termination.

The Court holds that the comments proffered by Plaintiff fail to establish that Defendant's nondiscriminatory reasons were pretext. Plaintiff has failed to show a genuine issue of fact with

---

[3] This Court is mindful that remarks only need to be made by one "principally responsible" for the adverse employment action. Typically, the person with authority over the employment decision is the one who executes the action against the employee; nevertheless, this is not always the case. Though ordinary employees cannot usually affect the employment of coworkers, an employee may be able to demonstrate that others had influence or leverage over the official decision maker. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 236-37 (5th Cir. 2000). There is no evidence in the record that lends credence to anyone influencing Farris' decision to recommend Plaintiff's termination to Ricca and Fennell.

respect to whether age was the but-for cause of the Defendant's decision to terminate the Plaintiff. Accordingly, summary judgment on Plaintiff's disparate treatment claim is granted.

### D. Title VII Claim of Racial Discrimination

#### 1. Title VII Generally

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race, color, sex or national origin …" 42 U.S.C. § 2000e-2(a). "Intentional discrimination under Title VII can be proven by either direct or circumstantial evidence." *Minnis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. College*, 55 F. Supp. 3d 864 (M.D. La. 2014).

The Fifth Circuit has explained:

> The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff. [When there is no direct evidence of discrimination, claims are] analyzed using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.' " If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.

*Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citations omitted).

The Court finds that the Defendant is entitled to summary judgment on this claim because Plaintiff has failed to demonstrate an issue of fact concerning pretext. Accordingly, Plaintiff's Title VII claims are dismissed.

### 2. *Prima Facie* Case

A *prima facie* case is established once the plaintiff has proven: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) she was replaced by someone outside the protected class; or in the case of disparate treatment, others similarly situated were treated more favorably. *Minnis*, 55 F. Supp. 3d at 875. Once the *prima facie* case is established, there exists a presumption of discrimination. *Id*. Defendant only contests the fourth element.

### i. Parties' Arguments

Defendant argues that Plaintiff fails to offer any proof to show her discharge occurred under circumstances giving rise to race discrimination. Plaintiff cannot claim that she was replaced by someone outside of her protected class as Defendant hired no one to replace her. (Doc. 45-4 at 2.) Defendant also contends that instead of alleging people outside the protected class were treated more favorably, Plaintiff testifies that preferential treatment was given to all other African American employees. In fact, these statements concerning the preferential treatment given to African American employees prompted the EEOC and LCHR to dismiss her charges. (Doc. 45-6 at 2.) Defendant states that, at most, Plaintiff only presented evidence that Farris had an issue with Plaintiff personally, which is not sufficient to establish a *prima facie* case of race discrimination. (Doc. 45-1 at 12.)

Plaintiff counters that a *prima facie* case of race discrimination is established through various circumstances that surrounded Plaintiff during her employment. Plaintiff cites the following as evidence of a *prima facie* case: Farris' favorable treatment of all other employees despite Plaintiff's years of service, Farris never treating other African American or white employees in a negative manner, an intentional reduction of Plaintiff's hours, and constant

exposure to racial slurs. Plaintiff also makes a general reference to the record, alleging its review will give rise to a genuine issue of material fact. (Doc. 53 at 8.)

### ii. Analysis

Establishing a *prima facie* case is designed as a minimal burden, and it is not intended to be rigid or onerous. *Holtz*, 258 F.3d at 77; *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001). However, this Court need not decide if the *prima facie* case was satisfied; even assuming that the Plaintiff met this burden, Plaintiff fails to rebut Defendant's legitimate, nondiscriminatory reasons for her termination or offer sufficient evidence supporting a claim of discrimination. *See, e.g.*, *McDaniel v. Temple Independent School Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985); *O'Neal v. Roadway Express*, 181 Fed. Appx. 417, 420 (5th Cir. 2006); *Fahim v. Marriott Hotel Servs.*, 551 F. 3d 344, 350 (5th Cir. 2008).

### 3. Legitimate Nondiscriminatory Reasons

Defendant's legitimate, nondiscriminatory reasons for Plaintiff's termination are the same as outlined above in reference to Plaintiff's age discrimination claim under the ADEA, including: fiscal purposes, confrontations with coworkers, regular tardiness, and comments made to Farris concerning her deceased son.

### 4. Pretext

This Court has explained:

> If the defendant is able to satisfy its burden by proffering a non-discriminatory reason for the adverse employment action, the plaintiff must then create a genuine issue of material fact that either: (1) the defendant's reason is not true, but instead is a pretext for discrimination (pretext alternative); or (2) regardless of the nondiscriminatory reason, the plaintiff's race was also a motivating factor (mixed-motives alternative). Once a Title VII case reaches the pretext stage of the analysis, the only question remaining is whether there is a conflict in substantial evidence to create a question for the fact-finder. Throughout, the ultimate burden of persuasion remains with the plaintiff. (Internal citations omitted).

*Minnis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. College*, 55 F. Supp. 3d 864 (M.D. La. 2014).

### i. Failure to Rebut Nondiscriminatory Reasons for Termination

The Court finds that Plaintiff has failed to sustain her burden of showing that Defendant's stated reasons are a pretext for discrimination. The Court bases this conclusion on Plaintiff's complete failure to address Defendant's legitimate, nondiscriminatory reasons for termination in her opposition. Plaintiff has offered only conclusory allegations unsupported by facts and fails to identify any specific evidence in the record that supports her claims. Once again, it is not the responsibility of the judge to search through briefs, looking for supporting evidence. In the absence of proof, the Court will not assume that the Plaintiff could or would prove the necessary facts. *Stewart v. May Dep't Stores*, 294 F. Supp. 2d 841, 845 (M.D. La. 2003). Through review of the pleadings, it is clear that Plaintiff cannot show that there is a genuine issue of material fact as to whether the reasons offered by Defendant were pretextual. These reasons remain undisputed by the Plaintiff.

Rather than refute Defendant's reasons as pretext, Plaintiff's deposition testimony acknowledges the provided reasons for termination. Defendant has also offered evidence that Farris has hired approximately 20 African American employees during her time as manager. Moreover, Plaintiff completely failed to address this issue in her opposition nor did she attempt to rebut Defendant's legitimate, nondiscriminatory reasons for termination.

### ii. Other Evidence of Discrimination

As additional evidence of pretext, Plaintiff points to several comments made by Farris and other employees. The remarks by Farris include "Affirmative action was out, get you a lawyer" and "Why is this black bitch sitting and working in the air conditioning, when I get through with

24

her she will be on food stamps." As discussed above, the Courts apply the *CSC Logic* test because the Plaintiff has failed to offer substantial evidence of pretext but relies only upon the aforementioned statements. Upon such consideration, these comments do not constitute evidence establishing pretext and preventing summary judgment.

The comments made by Farris and a co-worker's song about returning to Africa create the greatest concern. All of the comments relate to Plaintiff's protected class of African American, but none of the comments by coworkers satisfy the requirement that comments be made by a person with control over the decision to terminate the Plaintiff.[4] Yet, Farris has direct control over Plaintiff's termination and had the ability to recommend Plaintiff's termination to Ricca and Fennell. The comments made by Farris also relate to Plaintiff's termination as they seem to imply that Plaintiff would lose her job. However, none of the statements Plaintiff complains of were proximate in time to her termination. Most comments occurred as far back as 1997, and the food stamp comment occurred two to three years before Plaintiff's termination. (Doc. 45-5 at 14.)

The Court holds that the comments proffered by Plaintiff fail to establish that Defendant's nondiscriminatory reasons were pretext. Stray remarks are not sufficient for a juror to conclude that Defendant's explanations for the Plaintiff's termination are a pretext for discrimination or that race was a motivating factor in the decision. Accordingly, summary judgment on this claim is granted.

### E. Hostile Work Environment Claim

To state a hostile work environment claim under Title VII and the ADEA, plaintiffs must show that: (1) plaintiff is a member of a protected class; (2) plaintiff was subject to unwelcome harassment; (3) harassment was based on age or race; (4) harassment was sufficiently severe or

---

[4] As noted above, there is nothing in the record that shows Farris' decision to recommend Plaintiff's termination was impacted by another employee.

pervasive enough to affect a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). The fifth element need not be shown if the manager or employer is accused of the harassment. The Defendant contests only the fourth element.

The question of whether the work environment is hostile is one of fact. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). In order to find a workplace severely pervasive for harassment and hostile work environment to be actionable, courts consider a totality of the circumstances, including the frequency of the conduct, its severity, and whether it was physically threatening or humiliating, or a mere offensive utterance. The work environment must be both subjectively and objectively offensive—one that a reasonable person would find hostile and one the victim found offensive. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 125 (5th Cir. 2011).

Under the totality of the circumstances approach, a single incident of harassment, if extremely severe, could create a viable Title VII claim. However, a claim could also be founded on a continuous pattern of less severe incidents. The more pervasive or frequent the conduct, the less severe it must be. *EEOC*, 496 F.3d at 400.

If the work environment is found to be hostile, plaintiffs still must prove the workplace environment had the effect of altering a term, condition, or privilege of employment. Not all harassment in the workplace will rise to this level. *Carter*, 2011 WL 6090700, at *23. To violate Title VII, there must be an unreasonable interference with the employee's work performance. A mere utterance of an epithet which engenders offensive feelings does not interfere with a term, condition, or privilege. *Id.*

When evaluating verbal ridicule or insults, courts look for a regular pattern rather than sporadic incidents. *Id.* at 30. For instance, finding a noose in the workplace without accompanying graffiti or threatening remarks directed at the person was not considered sufficiently severe or pervasive. *Id*. However, when presented with a regular pattern of overt, race-based harassment, the court in *Walker* held under the totality of the circumstances that 20 incidents over 3 years was sufficiently pervasive. *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000). Comments included likening the African American employees to monkeys, comparing them to slaves, commenting offensively on African American hair, and calling employees "little black monkeys." *Id* at 621. Not only did these comments continue throughout the entire employment period, but an African American employee had left her job, citing the racist environment. *Id* at 626.

Plaintiff's opposition to Defendant's motion is completely devoid of any reference to her hostile work environment claim. Plaintiff fails to offer any proof or evidence of contradictory facts. The comments Plaintiff complains of date back to 1997, and none of the comments are physically threatening. Though Plaintiff claims many statements offended her, many do not meet the objective standard of the test. A reasonable person would most likely not be offended by someone asking about post-retirement plans, an offer of clothing, a request by a friend to watch children, or an invitation to go walking.

There are three notable comments that are based on race: (1) Farris' comment that affirmative action; (2) Farris' comment about food stamps; and (3) a co-worker's song about Africa. The comments were isolated incidents, not a continuous pattern, and they date back to 1997 with another occurring two to three years before Williams' termination. They were not so severe as to affect a term or condition of her employment. Plaintiff's claims do not rise to the level necessary to create a hostile work environment. The comments alleged by the Plaintiff are

relatively mild compared to other cases where far more frequent statements have been made, but have been held not to rise to the level needed to establish a hostile work environment. Examples of these cases are cited by the Eastern District of Louisiana in *Hardy v. Federal Express Corp.*:

> "In *Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir. 1982), the Fifth Circuit did not find a hostile work environment where plaintiff was directly called racial epithets by coworkers. Similarly, in *Grant v. UOP, Inc.*, 972 F. Supp. 1042 (W.D. La. 1996), *aff'd*, 122 F.3d 1066 (5th Cir. 1997), the court held that five separate utterances of the word 'nigger' directly to the plaintiff were insufficient to establish a hostile work environment claim. See also, *Smith v. Beverly Health and Rehabilitation Serv., Inc.*, 978 F. Supp. 1116 (N.D. Ga. 1997) (holding that a several utterances of racial epithets by a supervisor were insufficient to support hostile work environment claim); *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288 (E.D. Tex. 1996) (holding that five uses of the terms 'black Yankee' and 'son,' two racial jokes, and the use of the word 'nigger' were insufficient to establish a hostile work environment claim)."

No. 97-1620, 1998 WL 419716 (E.D. La. July 21, 1998).

In sum, the record establishes that the several comments of a discriminatory nature, though distasteful, were isolated incidents occurring years before Plaintiff's termination. These remarks are insufficient in themselves to establish a claim for hostile work environment. Thus, the Court finds that no reasonable jury could conclude that Plaintiff was subjected to a hostile work environment. Once again, in the absence of proof, the Court will not assume that Plaintiff could or would prove the necessary facts. Hence, summary judgment on this claim is granted.

### F. LEDL Claims of Race and Age Discrimination

The LEDL prohibits employers from discriminating against individuals on the basis of their race, color, religion, sex, age, or national origin. LA. REV. STAT. § 23:301. The scope of the LEDL is the same as Title VII, and the LEDL mirrors the ADEA; therefore, claims under the LEDL are analyzed under the same framework and jurisprudential precedent as Title VII and ADEA claims. *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 477 (5th Cir. 2002); *Walton-Lentz v. Innophos, Inc.*, No. 08-601, 2011 WL 721491, at *7 (5th Cir. April 25, 2012). As a result, since Plaintiff's claims

of discrimination under Title VII and the ADEA have been dismissed, Plaintiff's claims under the LEDL for discrimination on the basis of race and age should also be dismissed. Accordingly, summary judgment on this claim is granted.

## IV. Conclusion

Accordingly, **IT IS ORDERED** that Motion for Summary Judgment (Doc. 45) filed by Defendant Clegg's Nursery, Inc., is **GRANTED**; and **IT IS FURTHER ORDERED** that Plaintiff Delores L. Williams' claims are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on <u>July 7, 2016</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**